30 N.J. Super. 382 (1954)
104 A.2d 851
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JACK NEWTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered April 5, 1954.
Decided April 26, 1954.
*384 Before Judges EASTWOOD, JAYNE and CLAPP.
Mr. Eugene T. Urbaniak, Deputy Attorney-General, for the respondent (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
Mr. Jack Newton, pro se.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
Following a trial by jury, the defendant was convicted of carnal abuse on January 29, 1952. Under authority of N.J.S. 2A:164-3, he was sent to the State Diagnostic Center at Menlo Park for an examination and a report thereof was furnished to the court. Pursuant to recommendation of the Diagnostic Center, the defendant was committed to the New Jersey State Hospital at Marlboro, where he was received on April 18, 1952.
On June 19, 1953, under the authority of N.J.S. 2A:164-6, the Commissioner of Institutions and Agencies directed the transfer of defendant to the New Jersey State Prison at Trenton. To date, the Special Classification Review Board, appointed pursuant to N.J.S. 2A:164-8, has not recommended to the State Parole Board that defendant be released under parole supervision.
The appellant contends that his present confinement is illegal because it resulted from a transfer to New Jersey State Prison from an original commitment to a mental institution, and further, that he was not recalled by the sentencing court at the time of his transfer to State Prison and a minimum and maximum term imposed as required by N.J.S. 2A:164-17. He applied to the Middlesex County Court for a writ of habeas corpus, and from a denial thereof he takes this appeal.
The legislative authority under which the defendant's case was considered and determined is L. 1950, c. 207 (N.J.S. *385 2A:164-3 et seq.), which replaces L. 1949, c. 20. The enactment concerns itself with certain crimes commonly referred to as sex offenses and establishes a procedure for dealing with persons guilty of these crimes. The legislation was prepared by the Commission on the Habitual Sex Offender and incorporates recommendations of that Commission made after an exhaustive study of the problem. We find the title of the enacting legislation to be indicative of its nature and purpose. It concerns "the disposition of persons convicted of certain enumerated sex crimes and * * *" provides for, "sentence, incarceration and treatment * * *" therefor. Generally, every sex offender may, in the discretion of the court, be subjected to a mental and physical examination and if it be found that the offender's conduct is characterized by violence, repetitive or compulsive behavior or certain age disparity (N.J.S. 2A:164-5), the court's disposition shall be controlled by N.J.S. 2A:164-6. One of the alternatives and the one selected in the matter sub judice, is:
"(b) Such person may be committed to an institution to be designated by the Commissioner of Institutions and Agencies for treatment and upon release shall be subject to parole supervision.
In the event that the court shall order a commitment of the person as provided in this section, such order of commitment shall not specify a minimum period of detention, but in no event shall the person be confined or subject to parole supervision for a period of time greater than that provided by law for the crime of which such person was convicted."
Thereafter, the offender is under the jurisdiction of the Commissioner of the Department of Institutions and Agencies, for treatment and transfer.
If the results of the offender's diagnostic examination do not show conduct characterized by the pattern referred to in N.J.S. 2A:164-5, the court is directed to impose sentence on such person as provided by law. (N.J.S. 2A:164-9).
We discern a distinction in the method of handling of the offender dependent upon the results of the diagnostic examination. Where the conduct is characterized by certain specified patterns the statute directs incarceration and treatment *386 according to the needs of the patient. Where the conduct does not indicate the pattern commanding special consideration, the court is directed to sentence the offender. In the matter before us, the defendant was found to require incarceration rather than a sentence and he was accordingly committed to the State Hospital for treatment.
Scrutiny of the purposes of the different types of restraint points up their very substantial differences. An "institutional confinement" for treatment (under N.J.S. 2A:164-6), having no minimum term, but a potential maximum equivalent to the statutory maximum for the offense involved, when contrasted with the "sentence," as prescribed by law, which requires a fixed minimum term, accentuates the theory of training and social rehabilitation with the termination of service dependent upon its accomplishment in institutional confinements as distinguished from the more normal incidents of imprisonment implicit in sentences.
We are of the opinion that defendant's transfer from one institution (Marlboro) to another (State Prison) under the jurisdiction of the Commissioner of Institutions and Agencies, under the authority of N.J.S. 2A:164-7, does not change the character of his restraint from incarceration for treatment to a sentence, but merely changes his locale of confinement and supervising agency in his stages of treatment for return to society when he has been found capable of making acceptable social adjustment in the community. (N.J.S. 2A:164-8). The procedure followed in the matter sub judice having been strictly in accordance with the statute, we find no error therein.
As to the indeterminate nature of incarceration, we find no illegality under the circumstances. Remembering that the purpose of the incarceration is the treatment of the malady that produced the pattern of conduct found in the offender, it is readily discernible that the court cannot determine the time required for the proper treatment of the patient. The court has the aid of the Diagnostic Center and the facilities of the Department of Institutions and Agencies in determining the requirements of the patient. *387 The length of time required for the treatment depends on many factors not developed at the time of confinement and about which the court has no knowledge.
The validity of such transfers and confinement has been approved by the Mercer County Court in In re White, 10 N.J. Super. 600 (Law Div. 1950); In re Hodge, 17 N.J. Super. 198 (Law Div. 1951) and In re Zienowicz, 12 N.J. Super. 563 (Law Div. 1951). In the Zienowicz case, the court stated:
"That such a transfer is an executive rather than a judicial function and, moreover, presumptively within the contemplation of the court imposing sentence, is further apparent when it is considered that statutes conferring the right of transfer on administrative officials, which are in effect at the time of imposition of sentence, are as much a part thereof as though specifically incorporated in the sentence and, thus, the possibility of administrative transfer is an incident impliedly annexed thereto. (Cases cited.)
The validity of like statutes permitting transfer of prisoners has been upheld, quite uniformly, as against objections that they constitute a denial of due process or confer judicial powers on administrative officials, or constitute cruel and unusual punishment. 15 Am. Jur., Crim. Law, sec. 555."
The appellant contends that his confinement in the New Jersey State Prison is in contravention of N.J.S. 2A:164-17, which provides, inter alia: "All sentences to the New Jersey state prison shall be for a maximum and minimum term, except sentences for life * * *." In our opinion, the defendant is not serving a "sentence" as contemplated by N.J.S. 2A:164-17, but is undergoing treatment during confinement as provided in N.J.S. 2A:164-6b, and his confinement at the State Prison is by means of transfer under N.J.S. 2A:164-7, and not by virtue of sentence as provided under N.J.S. 2A:164-9. The statute (N.J.S. 2A:164-6) provides that there shall be no minimum period of treatment, but in no event shall the offender be confined for a period of time greater than that provided by law for the crime for which he was committed, which in the instant case is governed by N.J.S. 2A:138-1. The State Prison is an institution within the jurisdiction of the Department of Institutions and Agencies. (R.S. 30:1-7).
*388 The extent to which N.J.S. 2A:164-3 et seq. is at variance with N.J.S. 2A:164-17, the statutes must be read in pari materia. As stated by Mr. Justice Heher in the case of In re Huyler, 133 N.J.L. 171, 173 (Sup. Ct. 1945):
"It is a primary canon of construction that the provisions of statutes in pari materia shall be reconciled and harmonized, if possible, into a consistent, homogeneous whole. Crater v. County of Somerset, 123 N.J.L. 407; Broderick v. Abrams, 116 N.J.L. 40. This rule is in aid of the discovery of the legislative intent, and its application is circumscribed accordingly. The effectuation of the legislative will is the end to be served in the exposition of statutes; and this of necessity calls for an accommodation of apparent conflicts to advance the essential statutory policy, giving to each clause a meaning not in opposition to the related provisions, if that is reasonably consonant with the terms employed to voice the legislative design. The literal import of the terms ofttimes gives way to the outstanding legislative purpose, considering the particular statute in relation to statutes in pari materia. * * *"
The former statutes indicate an intent to provide for confinement and treatment under special circumstances and the latter statute to deal with sentencing in cases unattended by matters compelling special treatment. To accomplish their purposes, the statutes should be considered together, and in doing so we find they are not repugnant.
The judgment is affirmed.