189 N.J. Super. 379 (1983)
460 A.2d 177
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD CHAPMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 1, 1983.
Decided April 6, 1983.
*381 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Joseph H. Rodriguez, Public Defender, attorney for appellant (John M. Apicella, Assistant Deputy Public Defender, of counsel and on the letter brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Audrey G. Cohen, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal raises important questions relating to the sentencing of sex offenders under the New Jersey Code of Criminal *382 Justice, N.J.S.A. 2C:1-1. The basic problem before us concerns the susceptibility of sex offender sentences to mandatory minimum parole ineligibility periods. The resolution of this problem implicates such considerations as the effect of the sentencing judge's option to impose either a treatment disposition or a prison term on an eligible sex offender; the relationship between the sex offender provisions of chapter 47 of the Code and the 1979 Parole Act, N.J.S.A. 30:4-123.45 et seq.; the effect on sentencing options resulting from a defendant's simultaneous conviction of both eligible sex offenses and other offenses; the applicability to both first and subsequent offenders of N.J.S.A. 2C:43-6 b; the effect and consequences of N.J.S.A. 2C:14-6, which mandates a minimum parole ineligibility of five years for a second or subsequent sex offender, and the interrelationship between N.J.S.A. 2C:43-6 b and N.J.S.A. 2C:14-6.
Defendant Donald Chapman was charged with a variety of offenses arising out of his abduction and sexual assault of a young woman whom he brutally and sadistically abused. Pursuant to a plea agreement he pleaded guilty to two of these charges, kidnapping and aggravated sexual assault, and the State recommended dismissal of the remaining charges. After acceptance of the plea, defendant was referred by the trial judge to the Adult Diagnostic and Treatment Center (Avenel) for evaluation pursuant to N.J.S.A. 2C:47-1. It was there determined that his conduct "was characterized by a pattern of repetitive, compulsive behavior." N.J.S.A. 2C:47-3 a. The Avenel report recommended that defendant be sentenced there for a program of specialized treatment.
At the ensuing sentencing proceeding, the judge considered the question of whether, if he opted to impose an Avenel sentence pursuant to N.J.S.A. 2C:47-3, he could burden that sentence with a minimum parole ineligibility period pursuant to N.J.S.A. 2C:43-6 b, the general provision which accords the sentencing judge the discretion to fix a minimum parole ineligibility term of up to one-half of the set term of imprisonment. He concluded that an Avenel sentence is subject to N.J.S.A. *383 2C:43-6 b and accordingly entered a judgment of conviction sentencing defendant to Avenel for a term of 20 years on the kidnapping and for a concurrent term of 20 years on the aggravated sexual assault, each term subject to a ten-year mandatory minimum parole ineligibility.
At the sentencing proceeding which resulted in this judgment of conviction, the judge expressly reserved on the question of the applicability of N.J.S.A. 2C:14-6, which provides that upon a defendant's conviction of a second or subsequent sex offense and unless an extended term is imposed pursuant to N.J.S.A. 2C:43-7, the sentence is required to "include a fixed minimum sentence of not less than 5 years during which the defendant shall not be eligible for parole." That section further provides that a second or subsequent offender may not be afforded a suspended sentence or other noncustodial disposition, and further stipulates that a prior sex offender includes not only a conviction under N.J.S.A. 2C:14-2 or 2C:14-3 a, but also under "any similar statute ... for an offense that is substantially equivalent" to these sections.
Accordingly, a second sentencing proceeding was conducted at which the judge found that defendant's prior conviction under Title 2A of abduction with intent to defile constituted a prior offense within the intendment of N.J.S.A. 2C:14-6. He thus concluded that "under 2C:14-6 [defendant] must serve a fixed minimum sentence of five years during which he shall not be eligible for parole." "A supplement to judgment of conviction" was consequently entered, noting that defendant is "subject to the minimum term of parole ineligibility provisions of N.J.S.A. 2C:14-6. The judgment of conviction (attached hereto) is therefore supplemented accordingly." What was not, however, made clear was whether it was the intention or import of the supplemental judgment to amend the original judgment by substituting N.J.S.A. 2C:14-6 for N.J.S.A. 2C:43-6 b as the source of parole ineligibility and, if so, whether the judge intended to double the mandatory minimum period prescribed by 2C:14-6. Other possible interpretations of the supplemental judgment are *384 that the judge intended to rely on 2C:14-6 for the first five years of minimum parole ineligibility and 2C:43-6 b for the second five years, or that the judge merely intended to support the 2C:43-6 b parole ineligibility by pointing out that a period of parole ineligibility was in any event required by N.J.S.A. 2C:14-6. As will appear, hereafter, this ambiguity as to the precise meaning of the supplemental judgment of conviction is of significance.
In any event, defendant's appeal from the judgment of conviction, as supplemented, is based on his contention, first, that an Avenel sentence is not subject to a minimum parole ineligibility period pursuant to N.J.S.A. 2C:43-6 b and, second, that the trial judge erred in concluding that the character of his prior Title 2A conviction, the gravamen of which was attempted rape, properly invoked the multiple offender provision of N.J.S.A. 2C:14-6. As to this latter contention, we are satisfied substantially for the reasons stated by the trial judge that defendant was properly adjudicated a second offender pursuant to N.J.S.A. 2C:14-6. We are, however, also satisfied that this conclusion does not render moot the technical problems with the judgment of conviction which we discuss hereafter and which, for the reasons hereafter set forth, require that defendant be resentenced. These problems, moreover, require us to consider defendant's argument respecting the applicability of N.J.S.A. 2C:43-6 b to an Avenel sentence.
Resolution of the issues here requires some brief historical reference. The original Sex Offender Act, N.J.S.A. 2A:164-3 et seq., repealed by the Code, was based on the legislative perception that sex offenders whose conduct resulted from mental aberration constituted a special class of defendants requiring psychiatrically-oriented rehabilitative treatment rather than punitive confinement. It was the further legislative perception that if a sex offender were required to be confined while such treatment was rendered, the confinement should continue until, but not beyond, the time at which he was deemed safe for return to society. See, generally, State v. Clark, 65 N.J. 426, *385 434-436 (1974); State v. Wingler, 25 N.J. 161, 169-171 (1957). Accordingly, N.J.S.A. 2A:164-5 required the sentencing judge to impose a special treatment disposition upon recommendation of Avenel and its classification of defendant's conduct as repetitive and compulsive. The sentence, if one of commitment rather than probation, was by definition indeterminate subject to the maximum period of incarceration prescribed by statute for the specific crime. N.J.S.A. 2A:164-6. Parole was not available pursuant to a schedule of predetermined eligibility nor were commutation credits for work or good behavior available. Rather, parole release was entirely dependent upon the satisfaction of the parole board, based on the recommendation of the special classification review board, that defendant was "capable of making an acceptable social adjustment in the community." N.J.S.A. 2A:164-8 and 10. A defendant could be paroled, therefore, after a brief custodial period or could actually serve the entire statutory maximum prescribed for his offense. The dispositional scheme, therefore, accorded very little judicial discretion in sentencing, permitted a great disparity among defendants in the time of their actual incarceration and, as it ultimately developed, failed in many cases to provide effective treatment. See, e.g., State v. Harvey, 162 N.J. Super. 386 (Law Div. 1978), aff'd o.b. 170 N.J. Super. 391 (App.Div. 1979). It was also, of course, arguable that early parole release of some offenders on administrative recommendation alone failed adequately to protect the societal interest.
There was yet another problem encountered in the pre-Code administration and implementation of the Sex Offender Act which was attributable to the strict limitation of Avenel sentencing only to convictions of those crimes therein specifically enumerated. See e.g., State v. Clark, supra; State v. Gibson, 150 N.J. Super. 351 (App.Div. 1977), certif. den. 75 N.J. 20 (1977). Thus, it was apparently not an infrequent phenemenon for a defendant to be sentenced to Avenel for a sex offense covered by the act and simultaneously sentenced to State Prison for noncovered offenses, whether or not sex offenses, which were *386 nevertheless attributable to the same mental or physical abnormality invoking the treatment disposition of the covered offenses. Thus Clark involved such dual sentencing for covered sex crimes and the then uncovered sex crime of incest. Gibson involved an Avenel sentence for rape and a State Prison term for the uncovered nonsex offense of breaking and entering with intent to rape.
The result of such duality in sentencing was that a defendant might well receive treatment at Avenel and be deemed to be rehabilitated and safely returnable to the community as a result thereof but nevertheless, instead of being released, would be required to be transferred to State Prison to complete the originally imposed prison terms in respect of which he might not yet be eligible for parole. This consequence, in particular cases, was manifestly counterproductive, jeopardized the success of the treatment afforded at Avenel and was inappropriate and unnecessary for the protection of society. See, e.g., State v. Clark, supra, 65 N.J. at 432. Clearly, not all nonsex crimes committed as part of a criminal transaction which also involves a covered sex offense spring from the same aberrational sex-oriented impulses which motivated the sex offense. See, e.g., State v. Warfield, 166 N.J. Super. 129 (App.Div. 1979) (armed robbery committed against a rape victim). And compare State v. Lewis, 182 N.J. Super. 405 (App.Div. 1981). But where sex motivation does account for the nonsex crime, the inappropriateness of service of a prison term following successful Avenel treatment clearly demanded some degree of judicial intervention and led to the holding of State v. Clark, supra, interdicting the imposition of consecutive rather than concurrent Avenel and prison terms in this situation. Thus, as the court in State v. Clark reasoned:
In the case at hand, defendant's anti-social conduct, demonstrated by the five offenses to which he pleaded guilty, was all of a piece, resulting, as the Diagnostic Center report indicated, from the same causes and aberrations, even though not all of the offenses were then covered by the act. The long-time pattern of repetitive and compulsive behavior toward children and young males made it clear that defendant was ill, a menace and much in need of confinement and exposure to treatment. The prime difficulty with consecutive penal sentences *387 for non-covered sex offenses is that they are absolute and must be served even though, as has proved to be the situation here, treatment is considered to have been so successful as to warrant release on parole otherwise. The sentences thus are purely punitive, relating to compulsive conduct having the same root cause which the Legislature has said shall not be the subject of mere punishment. We are convinced that they serve no useful purpose and are indeed contrary, under the circumstances present, to the philosophy and purpose of the sex offender act. By the same token, we conceive them to be grossly unfair and unjust to the defendant.
We therefore conclude that the penal sentences for the non-covered sex offenses should have been made concurrent with and not consecutive to the sex offender commitment and that they can and should now be declared so, which is the relief sought by defendant. [Id. 65 N.J. at 435-436; footnotes omitted]
At least some of these concerns and problems in respect of both the underlying philosophy of the Sex Offender Act and its implementation motivated the New Jersey Criminal Law Revision Commission, as part of its Final Report on the New Jersey Penal Code, to recommend its repeal. As explained by Professor Knowlton, chairman of the Commission, in "Comments Upon the New Jersey Penal Code," 32 Rutgers L.Rev. 1, 16 (1979):
For several reasons, the commission did not recommend the retention of the sex offender statute. The idea that sex offenders progress to more vicious or dangerous offenses is simply not true; nor is there any reason to believe that sex criminals have a greater need for treatment than other offenders. Finally, society's failure to provide adequate treatment facilities is grossly unfair to persons subject to the special treatment provisions. [Footnotes omitted]
Accordingly, Appendix A of the Commission's Final Report, showing the proposed disposition of Title 2A provisions, indicated that the entire Sex Offender Act was to be replaced by N.J.S.A. 2C:43-7 and 44-3. See N.J. Criminal Law Revision Commission, 1 Final Report: Report and Penal Code 230-231 (1971) (hereafter cited as Final Report: Penal Code). N.J.S.A. 2C:43-7 proposed the imposition of extended terms and N.J.S.A. 2C:44-3 c, as originally drafted, proposed as a criterion for imposing an extended term the finding that the defendant "is a dangerous, mentally abnormal person whose commitment for an extended term is necessary for protection of the public." That finding would have required the judge to conclude that the defendant's mental condition was "gravely abnormal," that his conduct was characterized by a "pattern of repetition or compulsive *388 behavior or by persistent aggressive behavior," and that his mental condition rendered him a serious danger to others. See 1 Final Report: Penal Code 148, 155. In its Commentary on proposed N.J.S.A. 2C:44-3 c, the Commission explained that it was extending to all offenders the general standard of mental abnormality underlying the Sex Offender Act but that it was proposing to do so not for medical treatment reasons but rather for punitive reasons and concern for society's need for protection. See 2 Final Report: Penal Code 331-332.
As a result of the process of amendment and re-amendment of the proposed Penal Code which followed the 1971 Report, the extended term criterion based on mental abnormality was ultimately eliminated and the Sex Offender Act ultimately retained, but in modified form. Unfortunately, that legislative process was not accompanied by much elucidation in the way of legislative history. It does, however, appear that the 1975 Assembly Bill 3282 dropped the mental abnormality provision of 2C:44-3 but also indicated that the entire Sex Offender Act was to be repealed. That scheme was continued by the 1976 Assembly Bill 2380. The 1978 version of the Penal Code, Senate Bill 738, which was enacted into law on August 10, 1978, laid to final rest the mental abnormality provision but, at virtually the eleventh hour, added to the Code chapter 47, the new "sex offender act," entitled "Adult Diagnostic and Treatment Center."
While the specific reasons for this legislative decision are not explained by any definitive legislative statement, a comparison of the provisions of chapter 47 with those of repealed Title 2A suggests that although the Legislature was not prepared to abandon entirely the philosophy of the original Sex Offender Act, it nevertheless sought to make the implementation of that philosophy more responsive to the needs of both society and convicted offenders by according the judiciary a significantly greater measure of dispositional discretion. See, also, Knowlton, op. cit.
*389 Most significantly, N.J.S.A. 2C:47-3 a, unlike former N.J.S.A. 2A:164-5, does not mandate an Avenel sentence upon recommendation and appropriate classification. N.J.S.A. 2A:164-5 had provided that upon the Avenel recommendation "it shall be the duty of the court" to impose a treatment disposition. N.J.S.A. 2C:47-3 a provides only that it "may" do so. Thus, under the Code the judge has the option of sentencing a sex offender eligible for an Avenel disposition to an ordinary prison term. Another significant change made by the Code in the former statutory scheme relating to sex offenders is the provision of N.J.S.A. 2C:14-6 requiring, unless an extended term has been imposed pursuant to N.J.S.A. 2C:43-7, that a second or subsequent sex offender serve a minimum parole ineligibility term of not less than five years.
For the reasons hereafter stated, we conclude that N.J.S.A. 2C:14-6 is clearly applicable, whether the second or subsequent sex offender is sentenced to Avenel for treatment or to State Prison.
It is, of course, also clear that where a State Prison term is imposed in lieu of an Avenel sentence, that sentence may be subject to a judicially-imposed minimum parole ineligibility period under N.J.S.A. 2C:43-6 b in respect of a first sex offender and, in respect of a second or subsequent sex offender, for the purpose of increasing the five years mandated by N.J.S.A. 2C:14-6 up to an ineligibility period of one-half of the fixed prison term. The question which the relevant statute does not, however, address directly is whether N.J.S.A. 2C:43-6 b is applicable to an Avenel sentence either in the case of a first sex offender or, in the case of a second or subsequent offender, to enhance the statutory five-year minimum. We conclude that N.J.S.A. 2C:43-6 b is not applicable in either case to an Avenel sentence.
We recognize first that N.J.S.A. 2C:47-3 b provides that when the court sentences a defendant to an Avenel sentence, "it shall notwithstanding set the sentence in accordance with Chapters 43 *390 and 44" of the Code. Clearly, in contradistinction to the indeterminate sentence required by former N.J.S.A. 2A:164-6, this provision requires the court to set a fixed term guided by the general provisions of these chapters relating to maximum sentences, presumptive sentences, extended terms, consideration and statement of aggravating and mitigating circumstances and the like. We are, however, constrained to conclude that this provision did not also intend to extend the minimum parole ineligibility provision of N.J.S.A. 2C:43-6 b to an Avenel sentence imposed under chapter 47 of the Code.
It is first obvious that a period of mandatory minimum parole ineligibility is wholly antithetical to the spirit and scheme of the original Sex Offender Act since a basic predicate of that act was parole release whenever the defendant, by reason of the treatment afforded him, was deemed capable of making an acceptable social adjustment in the community. Because that consequence of the Avenel sentence is so clearly the sina qua non of its treatment approach, we are of the view that the Legislature, in retaining the sex offender treatment disposition of the Code, did not intend, except for the five-year mandate in respect of second or subsequent offenders, to alter the "release on cure" principle which obtained under the former act. It thus appears to us that the principal basis of the evident legislative compromise which resulted from the divergence of views on retaining the special sex offender disposition as part of the Code at all was to accord the sentencing judge the discretion to refuse to sentence an eligible sex offender to Avenel. Thus, if the judge opts for an Avenel sentence, implicit in that election is his determination that the defendant is a suitable candidate for the treatment approach, one of the integral components of which is release on cure. If he determines that the defendant is not such a candidate, his option is to reject the Avenel recommendation and to sentence him to a prison term, which is amenable to any burden, including a judicially imposed period of minimum parole ineligibility pursuant to N.J.S.A. 2C:43-6 b, and which is also subject to the primary parole eligibility terms of N.J.S.A. 30:4-123.51 *391 a. The only deviation from this scheme which we perceive in the statutes is the legislative superimposition pursuant to N.J.S.A. 2C:14-6 of the five-year minimum parole ineligibility term for a second sex offender whether sentenced to Avenel or to state prison.
We are persuaded to this conclusion by the apposite provisions of both the Code and the 1979 Parole Act, N.J.S.A. 30:4-123.45 et seq. We point out first that N.J.S.A. 2C:43-9, incorporated into chapter 47 by virtue of N.J.S.A. 2C:47-3 b, was amended in 1981 to provide simply that "release of offenders or parole recommitment and reparole after revocation shall be governed by the Parole Act of 1979...." The Senate Judiciary Committee statement makes clear that the purpose of this provision was, in effect, to defer the Code in respect of parole matters to the terms and provisions of the subsequently enacted Parole Act. Thus, as to such matters, the Code and the Parole Act must not only be read as an integrated document, but furthermore, in the event of contradiction between them, it is clearly the Parole Act, as the later, more specific and expressly deferred-to enactment, which must prevail. See, e.g., State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168, 176 (App.Div. 1979).[1]
N.J.S.A. 30:4-123.51 prescribes basic conditions for primary parole eligibility for each different category of inmate. Thus, paragraph a. of that section deals with adult inmates sentenced to fixed prison terms. Paragraph b. deals with adult inmates sentenced to life imprisonment. Paragraph c. deals with inmates sentenced to fixed prison terms under the Controlled Dangerous Substance Act. Paragraph d. deals with adult inmates sentenced to indeterminate prison terms as young adult offenders. Paragraph e. deals with adult inmates sentenced to *392 Avenel. Paragraph f. deals with juvenile inmates. And paragraph g. deals with adult inmates sentenced to county jail terms. Significantly, paragraphs a. and b., which address fixed and life sentence prison terms, expressly provide that no inmate shall be primarily eligible for parole, even if otherwise eligible, until he has served any "judicial or statutory mandatory minimum term." Thus, these paragraphs of the Parole Act expressly take into account the possibility of the imposition not only of a statutorily mandated minimum term but also of a judicially-imposed mandatory minimum term pursuant to N.J.S.A. 2C:43-6 b. In contradistinction to the recognition by these paragraphs of the potential of a judicially-imposed mandatory parole ineligibility term, paragraph e., which addresses Avenel sentences, recognizes only the potential of the statutory mandatory term prescribed by N.J.S.A. 2C:14-6. That paragraph provides in full as follows:
Each adult inmate sentenced to the Adult Diagnostic and Treatment Center, Avenel, shall become primarily eligible for parole upon recommendation by the special classification review board pursuant to N.J.S. 2C:47-5, except that no such inmate shall become primarily eligible prior to the expiration of any mandatory or fixed minimum term imposed pursuant to N.J.S. 2C:14-6.
Considering that N.J.S.A. 30:4-123.51 is a unitary piece of legislation, all of whose paragraphs were simultaneously adopted, we are constrained to conclude that had the Legislature intended the potential of a judicially-imposed minimum parole ineligibility term as a condition of an Avenel sentence, it could hardly have failed to so provide in paragraph e. in the same manner in which it so provided in paragraphs a. and b. Cf. State v. Groce, 183 N.J. Super. 168, 171-172 (App.Div. 1982) (construing N.J.S.A. 30:4-123.51 d). It further appears that the omission of the judicially-imposed mandatory ineligibility term from paragraph e. was in fact quite deliberate. The original version of Assembly Bill 3093, which was ultimately enacted as the 1979 Parole Act, had omitted from paragraph e. any reference to any mandatory parole ineligibility term, leaving primary parole ineligibility for all Avenel inmates to the special classification review board pursuant to N.J.S.A. 2C:47-5. The subsequent *393 official copy reprint of Assembly Bill 3093 added the exception in respect of N.J.S.A. 2C:14-6. It is thus evident that the Legislature had the parole ineligibility problem clearly in mind during the bill revision process and that its final determination was to include the statutory ineligibility period but not a judicially imposed one.
Thus, it is clear that under paragraph e. the sole impediment to parole release upon cure under N.J.S.A. 2C:47-5 is the statutory mandatory minimum term imposed on a second or multiple offender pursuant to N.J.S.A. 2C:14-6. N.J.S.A. 2C:47-5, incorporated by reference by paragraph e., provides in full as follows:
Any person committed to confinement under the terms of this chapter shall be released under parole supervision when it shall appear to the satisfaction of the State Parole Board, after recommendation by a special classification review board appointed by the commissioner that such person is capable of making an acceptable social adjustment in the community. The Chief Executive Officer of the Adult Diagnostic and Treatment Center shall report in writing at least semiannually to the special classification review board concerning the physical and psychological condition of such person with a recommendation as to his continued confinement or consideration for release on parole. Any person paroled pursuant to this section shall be subject to the provisions of Title 30 of the Revised Statutes governing parole and the regulations promulgated pursuant thereto.
We point out that N.J.S.A. 2C:47-5 corresponds both in text and philosophy with former N.J.S.A. 2A:164-8. N.J.S.A. 2C:47-5 is, nevertheless, by reason of N.J.S.A. 2C:43-9, qualified by the 1979 Parole Act. The Parole Act qualification to "release on cure" is a mandatory term imposed under N.J.S.A. 2C:14-6. But that is the only qualification which it provides. We are, therefore, satisfied that a person sentenced to Avenel is, except if burdened by a mandatory term under N.J.S.A. 2C:14-6, parolable by the State Parole Board on recommendation of the special classification review board.[2] If that is so, his Avenel sentence cannot be burdened by a minimum parole ineligibility *394 term under N.J.S.A. 2C:43-6 b. The purpose then, as we view it, for the Avenel sentence to be "set" in accordance with chapters 43 and 44 of the Code, as required by N.J.S.A. 2C:47-3 b, is to prescribe the fixed maximum term which defendant must serve before release from confinement, in contradistinction to the indeterminate term of the original Sex Offender Act which was subject to the maximum period imposable for the crime.
The argument made by the State is that if an Avenel sentence is not subject to a minimum parole ineligibility condition pursuant to N.J.S.A. 2C:43-6 b, another provision of chapter 47, namely, N.J.S.A. 2C:47-4 c, will be rendered meaningless. That section provides as follows:
If, in the opinion of the commissioner, upon the written recommendation of the Special Classification Review Board continued confinement is not necessary, he shall move before the sentencing court for modification of the sentence originally imposed.
It is the State's contention that the intent of this section is to authorize the Commissioner of the Department of Corrections, on recommendation of the special classification review board, to seek judicial modification of a mandatory minimum parole ineligibility term. Ergo, a mandatory minimum parole ineligibility term must be imposable pursuant to N.J.S.A. 2C:43-6 b. The State's sole support for this contention is the theory that if a defendant sentenced to Avenel is, pursuant to N.J.S.A. 2C:47-5, ordinarily parolable by the parole board whenever he has made an acceptable social adjustment, there is ordinarily no reason for the Commissioner to have to seek judicial modification of the original sentence in order to obtain the defendant's release from confinement. Therefore, the State concludes, it must be a mandatory minimum parole ineligibility term, imposed pursuant to N.J.S.A. 2C:43-6 b, which impedes the usual operation of N.J.S.A. 2C:47-5 and which the Commissioner was authorized by N.J.S.A. 2C:47-4 c to seek to have judicially modified.
We reject the State's reading, however, of the import of N.J.S.A. 2C:47-4 c. First, there is nothing in the text or history *395 of that section directly suggesting that its fundamental concern was directed to minimum parole ineligibility terms. Moreover, if we were to accept the State's interpretation, we would render meaningless the presumed deliberativeness of the omission by the 1979 Parole Act of reference to judicially-imposed mandatory minimum terms in connection with Avenel sentences. Furthermore, because of the unequivocal language of N.J.S.A. 2C:14-6 prohibiting judicial suspension of the mandatory term therein prescribed or any other noncustodial disposition, it is clear that N.J.S.A. 2C:47-4 c could not apply to the statutory, as opposed to a judicially, mandated minimum parole ineligibility term.
It is, therefore, our conclusion that N.J.S.A. 2C:47-4 c was not primarily intended to address modification of parole ineligibility terms. In the absence of an explicit legislative history, it appears to us that the situation it did intend to address is that of the dual Avenel and State Prison terms heretofore discussed. As we pointed out, the thrust of State v. Clark, supra, was to require the concurrency of such sentences where the noncovered offenses were attributable to the same root causes as the sex offense. Concurrency of the sentences alone, however, does not offer a complete resolution of the Clark dilemma since there always remains the possibility that a defendant would be deemed ready for release by Avenel before being eligible for ordinary parole from his concurrent prison term. There was, moreover, no apparent pre-Code mechanism for terminating confinement vis-a-vis the unserved balance of the prison term in those exceptional cases in which defendant's continued confinement simply made no sense either from his or from society's point of view. It is thus our conclusion that N.J.S.A. 2C:47-4 c was designed to provide just such a mechanism in those cases by according the Commissioner the opportunity to move for modification of the original sentencing package when "continued confinement is not necessary." We are of the further view that this reading of N.J.S.A. 2C:47-4 c is reinforced by its placement in chapter 47 immediately after 2C:47-4 b, whose substantive *396 provision is to permit the Commissioner, in his discretion, to order the transfer of a person under an Avenel sentence to the general prison population in the event there is no treatment response or if there is any other appropriate reason justifying such transfer before completion of the treatment program. See, e.g., State v. Wingler, supra, 25 N.J. at 180-181; State v. Harvey, supra. N.J.S.A. 2C:47-4 c is thus, in context, simply the other side of the coin, namely, a technique for implementing the Commissioner's determination, in the exceptional case, that because of treatment success the defendant should not be transferred to the prison population for completion of an outstanding sentence.
We are aware that the views we herein express are based upon two major premises. The first is that the Code approach to sex offenders is substantially different from the pre-Code approach in that sentencing judges are no longer required to impose an Avenel disposition but may opt instead to sentence to a prison term. The second is that the Code approach to sex offenders is substantively the same as the pre-Code approach in that if the judge does opt for the Avenel disposition, it remains generally subject to the former pre-Code "release on cure" consequence. We are also aware that the second of these premises is qualified in the case of second or subsequent offenders by the mandatory parole ineligibility term required by N.J.S.A. 2C:14-6. In superimposing that provision on the sex offender scheme, the Legislature evidently determined that subsequent sex offenders as a class present a special threat to society which justifies, indeed requires, their disqualification from the "release on cure" opportunity which is available to first offenders sentenced to Avenel. There is, however, no reason to extend the policy decision represented by N.J.S.A. 2C:14-6 to first sex offenders sentenced to Avenel. As to them, there is no express statutory impediment to implementation of the release on cure philosophy of the Act. Having concluded that the absence of such an impediment was a deliberate component of *397 the statutory scheme, we are satisfied that N.J.S.A. 2C:43-6 b was never intended to apply to Avenel sentences.
The foregoing observation requires, however, further consideration of the relationship between N.J.S.A. 2C:14-6 and N.J.S.A. 2C:43-6 b as they apply to prison rather than Avenel sentences. One of the constructional problems of 2C:14-6 is its requirement that the minimum parole ineligibility term be "not less than 5 years." No maximum, however, is specified.[3] We believe that ordinarily the maximum parole ineligibility term is determinable by reference to N.J.S.A. 2C:43-6 b, the judicial discretion provision permitting a parole ineligibility period of up to one-half the fixed term. As we pointed out in note 3, supra, the five-year period of N.J.S.A. 2C:14-6 is, in the case of a second sex offender convicted of a third-degree crime, greater than half the maximum term. We therefore conclude that the susceptibility of a second or subsequent sex offender to parole ineligibility is the greater as between the five-year period required by N.J.S.A. 2C:14-6 and one-half the fixed term permitted *398 by N.J.S.A. 2C:43-6 b.[4] It, therefore appears to us that where the maximum ineligibility term is one-half of the fixed term, the first five years are statutorily mandated and the balance thereof is discretionary and within the sentencing authority of N.J.S.A. 2C:43-6 b.
In summary, therefore, we conclude that an eligible sex offender may be sentenced either to Avenel or to State Prison. If he is a first sex offender, the Avenel sentence may not be subject to a judicially imposed parole ineligibility term pursuant to N.J.S.A. 2C:43-6 b. A prison term may, in the judge's discretion, be so burdened.[5] If he is a second or subsequent sex offender, his sentence must be burdened by a five-year parole ineligibility term pursuant to N.J.S.A. 2C:14-6 whether he is sentenced to Avenel or to State Prison. If he is sentenced to Avenel, five years is the maximum parole ineligibility term imposable. But if he is sentenced to State Prison, and if one-half his fixed term is greater than five years, that difference is also imposable pursuant to N.J.S.A. 2C:43-6 b. Finally, if defendant is given dual sentences to Avenel and to State Prison, the Commissioner, pursuant to N.J.S.A. 2C:47-4 c, *399 may, upon the completion of defendant's successful treatment, move for his release from confinement in respect of all remaining prison time yet to be served except for such time as is subject to a mandatory parole ineligibility period.
Applying these principles to the sentences here under review, we are satisfied that they were improper in various respects. First, kidnapping is not a covered sex offense for which an Avenel sentence is permissible. Consequently, as to that crime, defendant was required to be sentenced to State Prison with no impediment, obviously, to a minimum parole ineligibility term pursuant to N.J.S.A. 2C:43-6 b. As to the aggravated sexual assault, defendant could have been sentenced to State Prison subject to a minimum parole ineligibility term under both N.J.S.A. 2C:14-6 and 2C:43-6 b up to a total maximum of one-half the fixed term. Or he could have been sentenced to Avenel subject to a five-year ineligibility period pursuant to N.J.S.A. 2C:14-6. If sentenced on that crime to Avenel, the prison term for the kidnapping would appropriately be concurrent. Therefore, the sentences actually imposed here were illegal, first because the kidnapping sentence was an unavailable Avenel disposition and, second, because the Avenel disposition of the sexual assault could have been subject only to the mandatory minimum parole ineligibility term of N.J.S.A. 2C:14-6. Because of the nature and variety of the sentencing options here available within the constraints imposed by law, it is clear that defendant must be resentenced and that it is more appropriate for the trial judge to do so than for us by way of an exercise of original jurisdiction.
The sentences appealed from are vacated and we remand to the trial court for resentencing in accordance with this opinion. We do not retain jurisdiction.
MICHELS, P.J.A.D. (dissenting in part).
I disagree with that portion of the majority opinion that holds that N.J.S.A. 2C:43-6 b, part of the New Jersey Code of *400 Criminal Justice (Code), is wholly inapplicable to an Avenel sentence in the case of a first offender and is inapplicable in the case of a second or subsequent offender to enhance the statutory five-year minimum period of parole ineligibility mandated by N.J.S.A. 2C:14-6. Therefore I dissent.
It is fundamental that "the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." Sheeran v. Nationwide Mutual Ins. Co., Inc., 80 N.J. 548, 556 (1979) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917)). See State v. Maguire, 84 N.J. 508, 528 (1980); Vreeland v. Byrne, 72 N.J. 292, 302 (1977); DeHart v. Bambrick, 177 N.J. Super. 541, 549 (App.Div. 1981). See, also, 2A Sutherland, Statutory Construction (Sands 4 ed. 1973) § 46.01 at 48-49. This principle applied here leaves no room for judicial interpretation. The plain language of N.J.S.A. 2C:47-3 b, a dispositional provision of chapter 47 of the Code which deals with sentences to the Adult Diagnostic and Treatment Center, requires the judge who sentences an offender under its provisions to "set the sentence in accordance with Chapters 43 and 44 of this code." N.J.S.A. 2C:47-3 provides in pertinent part:
a. If the examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, the court may, upon the recommendation of the Adult Diagnostic and Treatment Center, sentence the offender to the Center for a program of specialized treatment for his mental condition; provided, however, that no such person may be sentenced to the Adult Diagnostic and Treatment Center in the absence of such a finding that his conduct was characterized by a pattern of repetitive, compulsive behavior.
b. In the event that the court shall sentence a person as provided herein, the court shall notwithstanding set the sentence in accordance with Chapters 43 and 44 of this code. [Emphasis supplied].
N.J.S.A. 2C:43-6, part of chapter 43 and within the Code's general sentencing provisions, reads in pertinent part:
a. Except as otherwise provided, a person who has been convicted of a crime may be sentenced to imprisonment, as follows:
(1) In the case of a crime of the first degree, for a specific term of years which shall be fixed by the court and shall be between 10 years and 20 years;

*401 (2) In the case of a crime of the second degree, for a specific term of years which shall be fixed by the court and shall be between 5 years and 10 years;
(3) In the case of a crime of the third degree, for a specific term of years which shall be fixed by the court and shall be between 3 years and 5 years;
(4) In the case of a crime of the fourth degree, for a specific term which shall be fixed by the court and shall not exceed 18 months.
b. As part of a sentence for any crime where the court is clearly convinced that the aggravating factors substantially outweigh the mitigating factors, as set forth in subsections a. and b. of 2C:44-1, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a., or one-half of the term set pursuant to subsection a., or one-half of the term as set pursuant to a maximum period of incarceration for a crime set forth in any statute other than this code, during which the defendant shall not be eligible for parole provided that no defendant shall be eligible for parole at a date earlier than otherwise provided by the law governing parole.
I am convinced by the clear and unambiguous language of the provisions of the Code quoted above that the sentencing court has the power to impose a minimum parole ineligibility term on an offender convicted of aggravated sexual assault and sentenced to Avenel. Cf. State v. Johnson, 182 N.J. Super. 1, 4 (Resent. Panel 1981), disapproved on other grounds 88 N.J. 26 (1981). By enacting these provisions, the Legislature, which has the exclusive power to prescribe the penalty to be imposed for commission of a crime, clearly signaled a dramatic change in the method of handling the sex offender. The Legislature abandoned the absolute prohibition of a punitive sentence under the original Sex Offender Act, N.J.S.A. 2A:164-3 et seq., and replaced it with a scheme of disposition under which the court may either sentence the offender to Avenel for a program of specialized treatment for his mental condition or reject the recommendation of the Adult Diagnostic and Treatment Center and sentence the offender to a prison term. However, whether the sentence is to Avenel or to the prison system, the sentence must be for a specific term of years (N.J.S.A. 2C:43-6 a) and, where appropriate, may be for a minimum term not to exceed one-half the term of years so imposed, during which time the defendant shall not be eligible for parole. N.J.S.A. 2C:43-6 b. Thus, the Legislature has empowered the sentencing court to consider not only the rehabilitation of the sex offender but also the punishment *402 of the offender and the protection of the public when imposing an Avenel sentence.
The construction placed upon N.J.S.A. 2C:43-6 b by the majority could be said to effect an implied repeal of N.J.S.A. 2C:47-3 b as applied to Avenel sentences. Such a result is untenable. I cannot agree that the Legislature intended either the 1981 amendment to N.J.S.A. 2C:43-9 or N.J.S.A. 30:4-123.51 e of the 1979 Parole Act to repeal N.J.S.A. 2C:47-3 b. First, the dimensions of the change in the disposition of sex offenders wroght by the passage of chapter 47 of the Code, specifically N.J.S.A. 2C:47-3, are such that I cannot conceive that if our Legislature intended to repeal these provisions and revert back to the "release on cure" philosophy of the original Sex Offender Act it would not have done so by an express repealer. Clearly, the Legislature has not expressly repealed this provision of chapter 47. Secondly, repeals by implication are not favored in the law. Before finding that an implied repealer has occurred a court must find clear and compelling evidence that the Legislature intended such a result. Brewer v. Porch, 53 N.J. 167, 173-174 (1969); Swede v. Clifton, 22 N.J. 303, 317 (1956); Henninger v. Bergen Cty. Freeholder Bd., 3 N.J. 68, 71 (1949). See, also, City of Camden v. Byrne, 82 N.J. 133, 153-154 (1980). In State v. Des Marets, 92 N.J. 62, 76 (1983), the Supreme Court emphasized that "the presumption against implied repeals is overcome by a showing of irreconcilable inconsistency...." See, also, 1A Sutherland, op. cit., § 23.10 at 230. The corollary is that "[s]tatutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other." 2A Sutherland, op. cit., § 51.02 at 290. Thus, in In re Huyler, 133 N.J.L. 171 (Sup.Ct. 1945), the court explained the rule as follows:
It is a primary canon of construction that the provisions of statutes in pari materia shall be reconciled and harmonized, if possible, into a consistent, homogeneous whole. Crater v. County of Somerset, 123 N.J.L. 407; Broderick v. Abrams, 116 Id. 40. This rule is in aid of the discovery of the legislative intent, and its application is circumscribed accordingly. The effectuation of the legislative will is the end to be served in the exposition of statutes; and this of *403 necessity calls for an accommodation of apparent conflicts to advance the essential statutory policy, giving to each clause a meaning not in opposition to the related provisions, if that is reasonably consonant with the terms employed to voice the legislative design. The literal import of the terms ofttimes gives way to the outstanding legislative purpose, considering the particular statute in relation to statutes in pari materia. Implied repealers are not favored in the law; the intention to effect the repeal of an earlier statute must be free from reasonable doubt. Hartman v. Board of Chosen Freeholders, 127 Id. 170. The earlier statute is modified by a later inconsistent enactment only to the extent of the repugnancy. [at 173]
The pertinent provisions of the Code and the 1979 Parole Act do not manifest "irreconcilable inconsistency." On the contrary, the commitment and parole statutes can be reconciled and harmonized into a coordinate, consistent whole to the end that the goals of rehabilitation on the one hand and punishment and protection of society on the other can be achieved. Although a mandatory parole ineligibility term, whether judicially imposed or mandated by statute, as it is by N.J.S.A. 2C:14-6 in the case of a second or subsequent sex offender, would have been in conflict with the "release on cure" philosophy of the original Sex Offender Act, it was precisely that policy and the absolute prohibition against punishment for those committing one of the most degrading of all crimes that the Legislature sought to change with the enactment of chapter 47 of the Code.
Moreover, the imposition of a mandatory parole ineligibility term is not irrevocable. The Commissioner of Corrections has the statutory power, if not the duty, to apply to the sentencing court for a modification of a sentence when he determines that continued confinement is not necessary. N.J.S.A. 2C:47-4 c. The exercise of this power is consistent with the legislative objectives of both the Code and the 1979 Parole Act, which require sentencing in accordance with the requirements of chapters 43 and 44 of the Code but endeavor to retain the rehabilitative benefits afforded by a program of specialized treatment at Avenel. Under this statutory scheme the sentencing court retains some control over the sex offender by imposing a mandatory minimum parole ineligibility term in an appropriate case. The existence of this power is not in "irreconcilable inconsistency" *404 with the parole provisions of the Code and the 1979 Parole Act because implicit in the parole provisions of N.J.S.A. 2C:47-5 of chapter 47 and N.J.S.A. 30:4-123.51 e of the 1979 Parole Act is the requirement that the possibility of release under parole supervision be subject to any judicially imposed period of parole ineligibility unless the sentence is modified by the sentencing court.
Accordingly, I conclude that Judge Humphreys in the Law Division had the statutory authority to impose a minimum parole ineligibility term upon defendant for the aggravated sexual assault.
NOTES
[1] In view of the amendment of the Code to conform with and incorporate the 1979 Parole Act, we are of the view that the doctrine of implied repeal referred to by the dissent is wholly inapposite.
[2] We do not here address the applicability of the Graves Act, N.J.S.A. 2C:43-6 c and d, to an Avenel sentence since that question is not before us. But see State v. Des Marets, 92 N.J. 62 (1983).
[3] We do, however, note the specific applicability of N.J.S.A. 2C:14-6 to, among other offenses, the crime of aggravated sexual contact, a third degree crime. See N.J.S.A. 2C:14-3 a. The ordinary maximum sentence for a third degree crime is five years. N.J.S.A. 2C:43-6 a(3). Consequently, a second sex offender convicted of a third degree sex offense would be required to serve, without parole eligibility, the entire maximum term. We further note that N.J.S.A. 2C:14-6 permits, in effect, a waiver of the mandatory minimum parole ineligibility term if the defendant has been sentenced to an extended term pursuant to N.J.S.A. 2C:43-7. That section authorizes a maximum term of ten years for a third degree crime. N.J.S.A. 2C:43-7 a(4). It is further required by N.J.S.A. 2C:44-3 that in order for an extended term to be imposed on the basis of persistent offender status, the defendant must have at least two prior convictions. It thus appears, for example, that the hypothetical multiple third degree sex offender, if sentenced to a maximum extended prison term because of at least two prior convictions, could receive a ten-year term without any mandatory parole ineligibility and consequently would be eligible for parole pursuant to N.J.S.A. 30:4-123.51 a in three and a third years less commutation time. A third degree sex offender who has committed only a second offense, on the other hand, is subject to no alternative to a mandatory five-year term. These anomalies are perhaps worthy of further legislative attention.
[4] The Graves Act, N.J.S.A. 2C:43-6 c, expressly provides for a similar scheme, i.e., a mandatory minimum parole ineligibility of three years where three years exceeds the option of a maximum ineligibility period between one-third and one-half of the fixed term.
[5] We are aware of the expression of a contrary view by the Resentencing Panel in State v. Johnson, 182 N.J. Super. 1, 4 (1981), the dissent in which was approved by the Supreme Court, 88 N.J. 26 (1981), affirming 176 N.J. Super. 1 (App.Div. 1980). See, also, 87 N.J. 335 (1981), remanding to the Resentencing Panel following the Appellate Division decision and retaining jurisdiction. The majority view of the Resentencing Panel, rejected by the Supreme Court on other grounds, included, although not germane to its fundamental rationale, the passing observation that a sex offender could receive a mandatory minimum term under N.J.S.A. 2C:43-6, but "as before, he `shall be released under parole supervision when it shall appear ... that such person is capable of making an acceptable social adjustment in the community ...' N.J.S.A. 2C:47-5." The opinion does not, however, attempt to reconcile what are actually contradictory and mutually exclusive consequences.